```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

ANDREA BLANCH,                             :

                          Plaintiff,       :

            -against-                      :     03 Civ. 8026 (LLS)

JEFF KOONS, DEUTSCHE BANK, AG, and THE     :     OPINION and ORDER
SOLOMON R. GUGGENHEIM FOUNDATION,
                                           :
                          Defendants.
                                           :
------------------------------------------X
```

In this action for copyright infringement, defendants move for summary judgment in their favor. They assert, among other things, that plaintiff Blanch's claims of infringement are barred by the statute of limitations, that defendant Koons' painting is not substantially similar to Blanch's photograph, that Koons made "fair use" of the portion of the photograph which he copied, and that the damages Blanch seeks are unavailable as a matter of law.

Background

Plaintiff Andrea Blanch owns the copyright on her photograph entitled Silk Sandals by Gucci, published in the August 2000

issue of Allure Magazine, which is distributed throughout the United States.  The photograph shows the lower part of a woman's bare legs (below the knee) crossed at the ankles, resting on the knee of a man apparently seated in an airplane cabin.  She is wearing Gucci sandals with an ornately jeweled strap.  One of the sandals dangles saucily from her toes.  In Blanch's original photograph, the airplane cabin setting included its floor, window, wall and part of a seat, a small portion of a fur garment, and a magazine on the floor by the man's seat.  In the published version, the fur was not visible and only a small portion of the magazine was shown.  The photograph as a whole conveyed a sense of sleek elegance, with faintly erotic undertones, and was designed to illustrate the metal-flecked polish on the model's toenails, as part of Allure's six-page article about metallic makeup.

Defendant Koons copied only the model's legs, feet, and Gucci sandals as one component in his painting entitled "Niagara," which was one of seven works commissioned by defendant Deutsche Bank and exhibited by it and defendant Guggenheim Foundation.  Koons omitted the background and all its details.  There is no airplane cabin, lap, magazine or other detail from Blanch's picture.  The legs are not represented as level (resting on a lap) but as hanging vertically, with three

other pairs of women's legs and feet (eight legs and feet in all, roughly parallel to each other).

Plaintiff describes "Niagara" as depicting (Consent Pretrial Order, **&** B.19):

> four pairs of women's legs and feet which dangle over a landscape.  Below them is a monstrous chocolate-fudge brownie, served with a mound of ice cream and flanked by trays of glazed donuts and apple danish pastries.  The sandals and feet which appear at the second from the left were slavishly copied from Blanch's photograph which appeared in *Allure* magazine.

Defendants describe "Niagara" as (id., **&**C.36, based on Koons' June 10, 2005 affid., p. 4, **&** 8):

> a montage or collage of common images found in popular culture--advertisements, retail displays, and beauty and fashion magazines--which Koons has transformed into an entirely new artistic work by altering the context, orientation, scale, and material of the original images, and by combining and layering the images over sublime landscapes in a large scale oil painting that comments on and celebrates society's appetites and indulgences, as reflected in and encouraged by a ubiquitous barrage of advertising and promotional images of food, entertainment, fashion and beauty.

The core issue on the merits is whether the painting makes fair use of the portion of the photograph which it copied.

## Discussion

With roots in the common law, the doctrine of "fair use" was incorporated into the Copyright Act in 1976 (17 U.S.C. **'** 107):

3

**' 107. Limitations on exclusive rights:  Fair use**

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.  In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include--

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

The doctrine is not to be applied rigidly (which might "stifle the very creativity which that law is designed to foster") but case-by-case, applying the four factors together as "general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses."  See <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 576, 577-78, 114 S.Ct. 1164, 1170 (1994) (internal citation omitted).

Judge Leval's classic and much-cited commentary <u>Toward A Fair Use Standard</u>, 103 Harv. L. Rev. 1105 (1990) summarizes the concept of fair use (<u>id.</u> p. 1110):

> Briefly stated, the use must be of a character that serves the copyright objective of stimulating productive thought and public instruction without excessively diminishing the incentives for creativity.  One must assess each of the issues that arise in considering a fair use defense in the light of the governing purpose of copyright law.

1. The Purpose and Character of the Use

This factor lies at the heart of the fair use question, which is whether the use is justified by the objective of copyright law stated above, which may depend on whether the copier's use is different from the original author's.  As stated by Judge Leval  (<u>op</u>. <u>cit</u>. p. 1111):

> I believe the answer to the question of justification turns primarily on whether, and to what extent, the challenged use is <u>transformative</u>.  The use must be productive and must employ the quoted matter in a different manner or for a different purpose from the original.  A quotation of copyrighted material that merely repackages or republishes the original is unlikely to pass the test; in Justice Story's words, it would merely "supersede the objects" of the original.  If, on the other hand, the secondary use adds value to the original--if the quoted matter is used as raw material, transformed in the creation of new information, new aesthetics, new insights and understandings--this is the very type of activity that

the fair use doctrine intends to protect for the enrichment of society.

(emphasis in original; footnotes omitted)

The concept of "transformative" use was described by the Second Circuit in <u>American Geophysical Union v. Texaco Inc.</u>, 60 F.3d 913, 923 (2nd Cir. 1994):

> The "transformative use" concept is pertinent to a court's investigation under the first factor because it assesses the value generated by the secondary use and the means by which such value is generated.  To the extent that the secondary use involves merely an untransformed duplication, the value generated by the secondary use is little or nothing more than the value that inheres in the original.  Rather than making some contribution of new intellectual value and thereby fostering the advancement of the arts and sciences, an untransformed copy is likely to be used simply for the same intrinsic purpose as the original, thereby providing limited justification for a finding of fair use. . . .
>
> In contrast, to the extent that the secondary use "adds something new, with a further purpose or different character," the value generated goes beyond the value that inheres in the original and "the goal of copyright, to promote science and the arts, is generally furthered."
> [Citing <u>Campbell</u>, 510 U.S. at 579, 114 S.Ct. at 1171 and Leval <u>supra</u>.]

Mr. Koons' use of the legs is transformational, as described in his June 10, 2005 affid. pp. 5-6, **&&** 10, 11:

> When I saw the article in Allure Magazine about cosmetics, certain physical features of the legs of that model represented for me a particular type of woman frequently presented in advertising.  In this photograph, I saw legs and especially elongated toes that were glossy, smooth, expertly manicured, and dressed in very expensive and not particularly practical sandals. . . . For <u>Niagara</u>, I removed these

>anonymous legs from the context of the photograph, and totally inverted their orientation.  I then added these legs to other contrasting images of legs . . . and along with ice cream, donuts and pastries, floated them playfully and "ethereally" above a liberating landscape of grass, a waterfall and sky.  In so doing, I transformed the meaning of these legs (as they appeared in the photograph) into the overall message and meaning of my painting.  I thus suggest how commercial images like these intersect in our consumer culture and simultaneously promote appetites, like sex, and confine other desires, like playfulness.
>
>. . .
>
>And I did not even strictly copy the legs.  I completely inverted their orientation, painting them to surreally dangle or float over the other elements of the painting.  I also changed the coloring and added a heel to one of the feet (a heel that had been completely obscured in the photograph by the man's leg).

He explains his selection of the legs in the photograph (rather than simply painting a model's legs himself) because of their iconic representation as presented to the public in ubiquitous media (id. pp. 6-7, **&** 12):

>This photograph is typical of a certain style of mass communication.  Images almost identical to it can be found in almost any glossy magazine, as well as in other media.  To me, the legs depicted in the Allure photograph are a fact in the world, something that everyone experiences constantly; they are not anyone's legs in particular.  By using a fragment of the Allure photograph in my painting, I thus comment upon the culture and
>attitudes promoted and embodied in Allure Magazine. . . . My paintings are not about objects or images that I might invent, but rather about how we relate to the things that we actually experience. . . . Therefore, in order to make statements about contemporary society and in order for the artwork to be valid, I must use

>   images from the real world.  I must present real
>   things that are actually in our mass consciousness.

No original creative or imaginative aspect of Blanch's photograph was included in Koons' painting. The use Koons made of the only items he copied--the crossed legs, feet and sandals--was different from their use in the photograph, whose purpose was to illustrate metallic nail polish. The painting's use does not "supersede" or duplicate the objective of the original, but uses it as raw material in a novel context to create new information, new aesthetics, and new insights. Such use, whether successful or not artistically, is transformative.

Both works were created for commercial purposes.

The first factor favors the defendants.


2. The Nature of the Copyrighted Work


The photograph as a whole is sufficiently creative and original to receive copyright protection, and it is copyrighted. Yet its general publication throughout the United States favors fair use under <u>Arica Inst., Inc. v. Palmer</u>, 970 F.2d 1067, 1078 (2d Cir. 1992). Blanch has no right to the appearance of the Gucci sandals (perhaps the most striking element of the photograph), and Koons appropriated nothing else of the

photograph except the crossed legs.  Viewed alone (disregarding the sandals) they are banal rather than creative.

The second factor favors the defendants.

### 3. Amount and Substantiality of Portion Used in Relation to Copyrighted Work as a Whole

The crossed legs are the focal point of interest in the photograph; all the rest is background.  If that were all to be considered under the third heading, this factor would favor Blanch.  However, "what is relevant is the amount and substantiality of the copyrighted *expression* that has been used, not the *factual content* of the material in the copyrighted works" Salinger v. Random House, Inc., 811 F.2d 90, 97 (2d Cir. 1987) (emphasis in original); Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc., 166 F.3d 65, 67 (2d Cir. 1999) (quoting Salinger), thus calling for "thought not only about the quantity of the materials used, but about their quality and importance, too."  Campbell, 510 U.S. at 587, 114 S.Ct. at 1175.

As remarked above, the quality of copyright protection for the crossed legs is very weak.  Without the Gucci sandals (in which Blanch has no copyright interest) all that is left is a representation of a woman's legs, crossed at the ankle.  That is not sufficiently original to deserve much copyright protection.

cert. denied, 506 U.S. 934, 113 S.Ct. 365 (1992); United Feature Syndicate, Inc. v. Koons, 817 F.Supp. 370 (S.D.N.Y. 1993) and Campbell v. Koons, No. 91 Civ. 6055, 1993 WL 97381 (S.D.N.Y. April 1, 1993). Those cases, which flow from a single earlier body of Koons' work, are different on their facts. Each case of alleged infringement involving different works must be decided on its own merits. Cf In re PCH Associates, 949 F.2d 585, 593 (2d Cir. 1991) (for issue preclusion to apply, fact issues in both proceedings must be identical).

## Conclusion

Defendants' motions for summary judgment are granted. The Clerk will enter an order dismissing the action, with costs and disbursements to defendants according to law.

So ordered.

DATED:   New York, New York
         November 1, 2005

*Louis L. Stanton*
LOUIS L. STANTON
U. S. D. J.